**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>                                       )<br>     v.                                  )<br>                                       )<br>PAUL MADISON. | Case No. 12-cr-1004-1<br><br>Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER**

For the reasons stated below, Defendant's motion for judgment of acquittal or new trial [206] is denied. Counsel are directed to confer and email the Courtroom Deputy no later than May 5, 2020 to set a sentencing date during the week of July 6.

**I.  Background**

A grand jury returned an indictment against Defendant Dr. Paul Madison, charging him with six counts of engaging in a healthcare fraud scheme, two counts of aggravated identity theft, and three counts of making and causing to be made false and fraudulent statements in connection with the delivery and payment of healthcare benefits and services. All of this activity related to allegations of fraudulently submitting bills to insurance companies for what the Government contends were phantom "manipulations under anesthesia," or "MUAs," at Defendant's downtown Chicago outpatient surgery facility.

The case went to trial in November 2018 and lasted almost three weeks, with a four-day recess for the Thanksgiving holiday. A parade of Dr. Madison's patients testified as to the procedures he and other doctors operating out of the surgery facility performed on them, and the Government's evidence showed major discrepancies between the procedures performed and the procedures billed for reimbursement by the insurance company. Closing arguments took place on November 28, 2018, and the jury returned a guilty verdict on all counts the following day.

**II.  Legal Standard**

In his post-trial motion, Defendant seeks a judgment of acquittal under Federal Rule of Criminal Procedure 29 and a new trial under Federal Rule of Criminal Procedure 33. To obtain a judgment of acquittal under Rule 29, Defendant must meet "a nearly insurmountable hurdle." *United States v. Johnson,* 874 F.3d 990, 998 (7th Cir. 2017). Specifically, Defendant must establish that, considering all of the evidence in the light most favorable to the government and drawing all reasonable inferences in the government's favor, no rational jury could have found defendant guilty. *United States v. Mancari*, 453 F.3d 926, 936 (7th Cir. 2006). Relief under Rule 29 must be denied unless the Court finds that, "the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Curtis*, 324 F.3d 501, 505 (7th Cir. 2003). Under Rule 33, the Court may grant a new trial only where errors or omissions

at trial jeopardized the substantial rights of defendant. *United States v. Eberhart*, 388 F. 3d 1043, 1048 (7th Cir. 2004), *overruled on other grounds*, 546 U.S. 12 (2005). In determining whether to grant a new trial, a court should exercise "great caution" and be "wary of second guessing the determinations of the jury." *United States v. Gillaum*, 372 F.3d 848, 857 (7th Cir. 2004).

### III. Discussion

Defendant has offered four arguments for relief: (1) the Court's exclusion of a purported employee theft defense; (2) the Court's exclusion of a recording of Defendant; (3) insufficiency of the evidence to sustain a conviction, and (4) unfair prejudice arising out of certain comments made during the Government's rebuttal argument. The Court addresses each argument in turn.

#### A. Employee Theft Defense

Prior to trial, the Government filed a motion *in limine* seeking to preclude Defendant from arguing employee theft as a defense to the offenses alleged in the indictment unless he could proffer evidence connecting any such thefts to the charged fraudulent billing scheme. See, *e.g.*, *United States v. Golding*, 833 F 3d 914, 918 (8th Cir. 2016) (district court did not abuse its discretion in precluding proposed testimony about doctor's employees including theft of cash on finding that the testimony was irrelevant to the charged offenses, one of which was for billing for visits the doctor did not conduct). Both before and during trial, the Court gave Defendant numerous opportunities to connect the snippets of evidence he had of possible employee thefts to the issues for trial, but he was never able to do so. See [162, at 2-3 (precluding the introduction of such evidence at trial "unless and until Defendant makes an evidentiary showing—outside the presence of the jury—supporting his theory.)"].

In his post-trial motion, Defendant points to two occasions during the trial when, he believes, an adequate basis for injecting an employee theft defense into the trial was presented. First, he claims that he should have been allowed to elicit testimony in support of the defense from Kimberly Keys, an employee of Defendant who was called as a Government witness. Prior to trial, the Government provided Defendant with an interview report during which Keys mentioned that one of the bill collectors at the surgery center admitted that he was somehow making money from collection checks to compensate for bounced salary checks. When Defendant proposed to elicit testimony about the bill collector's alleged admission at trial, the Court excluded the testimony as inadmissible hearsay. See Nov. 16 Tr. at 2.

Defendant now contends that the proposed testimony was admissible because it was not being offered for the truth of the matter asserted. That is incorrect. The only reason to have raised the issue in front of the jury would have been to establish an employee theft, which was precisely the truth of the matter asserted. Defendant's contention that the statement was admissible to show the bill collector's state of mind also fails, because that individual was not on trial and his state of mind thus would have been irrelevant to the jury. The only fact of potential consequence—which Defendant could have elicited from the bill collector himself had he called him as a witness—was the theft of company funds itself.

Moveover, even that fact was *not* of consequence absent a link to the scheme to defraud. No doubt there were some legitimate services performed at the surgery center—probably lots of legitimate services worth millions of dollars. But to show a link between employee theft and the charged scheme, Defendant would need to show that rogue employees were stealing MUA checks. Otherwise, the fact that employees may have been stealing from Dr. Madison might support the existence of an additional crime, but would do nothing to negate the charged crime. In other words, that Dr. Madison may have been the victim of theft by his own employees does not mean that Dr. Madison was not stealing from the insurance companies through false billing. And Keys' hearsay statement in no way links the other employee to the scheme charged in the indictment; all that he supposedly admitted to doing was taking other checks to make up for the fact that his own salary check from Defendant's company could not be negotiated due to insufficient funds in the company's accounts. There simply was no basis for inferring involvement in the charged crimes from that statement, even if it were not hearsay.

When the issue arose during trial, the following colloquy occurred at sidebar:

**The Court**: ….. There is still no link to the scheme here. In other words, there is no – there is no evidence that those checks were – that were MUA checks, as opposed to any old random check that came in. And absent that –

**Defense Counsel**: I understand what you are saying.

**The Court**: -- there isn't any connection to the charges in this case; and, therefore, you're injecting an issue that's irrelevant to the jury. I am not saying that you can never get there because – and that's the very reason I wrote the opinion the way I wrote it. But you're not there yet.

**Defense Counsel**: Understood. Thank you for your time, your Honor. I appreciate it.

Nov. 18 Tr. at 4. Defendant was never able to bridge that gap. In short, the employee theft defense fails on two grounds: (1) hearsay and (2) lack of relevance to an issue in the case.

Defendant's post-trial motion also argues that his employee theft defense was supported by the testimony of one of his witnesses, Al DeBonnett, who claims to have found uncashed checks in a drawer used by a former employee at the surgery center named Cherry Carr. Again, the Court gave Defendant an opportunity to link those checks to a valid employee theft defense. See Nov. 27 Tr. at 32-45. But Mr. DeBonnett had no explanation for why the checks were in the drawer, making any theft conclusion purely speculative. What defense counsel made clear at the hearing was that all of the unidentified checks were eventually deposited for the benefit of Defendant's business and that DeBonnett had no idea whether any of these purported checks had anything to do with MUAs. *Id*. at 40-41. Notably, Defendant chose not to ask Cherry Carr any questions about these purported checks when she testified. Apart from these unexplained checks, DeBonnett claimed to have found other irregularities at the surgery center during his relatively brief tenure as chief financial officer, which the Court did allow him to describe to the jury. *Id*. at 40-41, 44-45. At the end of his testimony, DeBonnett stated that he "was trying to find out what the heck was

going on because [he] smelled something bad." *Id.* at 52. Taken as a whole, the proffered testimony of Keys and DeBonnett showed only a vague, hearsay statement that one employee stole some checks and no basis whatsoever for inferring that he stole MUA checks or had anything to do with fraudulent billings. Unfortunately for Defendant, the evidence at trial that established "something bad" occurring at the surgery center all revolved around his billing insurance companies for procedures that were not performed.

### B. Recorded conversation

Defendant's second argument focuses on testimony that he sought to elicit from a former employee named Carlos Carmona. Prior to trial, the Government provided Defendant with a copy of a recording made by Mr. Carmona, who at that time was working at Defendant's business. On cross-examination during the Government's case-in-chief, Carmona acknowledged that he had worn a wire. Nov. 15 AM Tr. at 49. Defense counsel followed up with a question about what Defendant said to Carmona, which was met with a hearsay objection. At sidebar, the Court reminded counsel of the pre-trial rulings excluding Defendant from offering his own prior statements and ruled that counsel could not evade that ruling by introducing the Defendant's hearsay statement through Carmona. *Id.* at 50-52.

Defendant later sought to call Carmona in his case-in-chief to testify about the same conversation. At that time, Defendant raised three possible arguments for avoiding the hearsay bar: excited utterance, state of mind, and the residual hearsay objection. Nov. 26 PM Tr. at 18-22. The Court reserved ruling until after having the opportunity to review a draft transcript of the conversation. *Id.* The next morning, outside the presence of the jury, the Court ruled that the conversation was not relevant because it concerned double billing not charged in the indictment. Nov. 27 AM Tr. at 3-7. The Court further found that, even if the testimony were relevant, the hearsay exceptions offered by Defendant did not apply. These oral rulings were later memorialized in a written order [187] entered on the docket later that day.

Defendant now claims that the Court erred in not allowing this conversation into evidence. But neither in his opening nor in his reply brief does Defendant make any effort to connect the conversation to any charged conduct—*i.e.*, fraudulent billing for MUAs that were not actually performed. But even if, as Defendant contends, it does not matter whether the bills being discussed by Madison and Carmona reflected charged conduct or some other double billing scheme that was not charged, the arguments for overcoming the hearsay bar remain completely unconvincing. Defendant appears to have abandoned two of the grounds raised at trial and raises the third—excited utterance—only in his reply brief. The Court stands by its ruling and the explanations provided both at sidebar and in greater detail in the follow-up written order [187].

### C. Motion for judgment of acquittal

Defendant's third basis for relief is an undeveloped assertion that this Court erred in allowing the jury to decide the case. Defendant does not identify any particular weakness in the evidence that this Court overlooked. In fact, the evidence at trial presented an overwhelming case of (1) rampant fraud shown by the disconnect between the procedures actually performed and those for which bills were submitted to insurance companies, (2) Defendant's knowing participation in that fraud, and (3) Defendant's financial benefit from the massive unearned reimbursements sent to his firm. Despite the length of the trial, it did not take the jury long to reach a unanimous verdict

convicting Defendant on all eleven counts. All of this shows that even if there were any errors at trial—and Defendant has not made a convincing case that there were any—they surely were harmless and had no effect on Defendant's substantial rights or on the outcome of the trial because the documentary and testimonial evidence of Defendant's guilt was so strong.

### D. The Government's Rebuttal Argument

In his final argument, Defendant suggests that the Government made an improper argument on the employee theft defense in its rebuttal closing argument. As an initial matter, Defendant did not make a contemporaneous objection. As a consequence, he is entitled to nothing more than plain-error review. See *United States v. Anderson*, 450 F.3d 294, 300 (7th Cir. 2006). In addition, courts are directed to "evaluate alleged impropriety during closing argument in the context of the record as a whole." *United States v. DeSilva*, 505 F.3d 711, 719 (7th Cir. 2007).

To set the scene, the Court includes several portions of Defendant's closing argument where counsel suggests the possibility of employee theft playing a role in the events about which the jurors had heard testimony for the past three weeks:

> And then there was a discussion about those checks being endorsed by the patient and heading back to Watertower ….. But once those checks are in the door, you heard from Al DeBonnett they are as good as cash. You can go anywhere with that Blue Cross Blue Shield check and it's cash.

Nov. 28 PM Tr. at 10.

> ….. His billing people were sending them out. I want you to remember that once those checks are cashed — or endorsed — they are as good as cash.

*Id.* at 11.

> Once they were signed, they were as good as cash.

*Id.* at 19.

> The checks that were third-party endorsed — excuse me — were endorsed — once endorsed they're cash. We know cash is missing. We know checks are missing. Look at that.

*Id.* at 32.

The last statement elicited an objection from the Government because the statement lacked any support in the evidence introduced at trial. *Id.* After a sidebar hearing, defense counsel properly backtracked, telling the jury that there was no evidence about cash missing. *Id.* at 34.

The portion of the Government's rebuttal to which Defendant now objects reads as follows:

5

> As far as, you know, rogue employees who orchestrated this under his nose. I mean, that seems to be the defendant's go-to, right? 2007 investigation, what does he do? He had Carr and Keys sign that letter saying, "We made a mistake." And she [Carr] told you why she signed it. Right? She was in her mid-20s when she worked there, and she looked up to the defendant. She respected him. He paid for her coding certification. She was loyal to him. And what did he do? He blamed his staff. And what's he doing now? He is blaming his staff. "I have no knowledge. I did not know." Yes, he did…

Nov. 28 PM Tr. at 20.

To begin, as noted above, the failure to object at trial limits the review to which Defendant is entitled on a post-trial motion (or on appeal). Regardless, under any standard, Defendant's argument lacks merit. When assessing a properly preserved claim of prosecutorial misconduct in closing arguments, a court must ask (1) whether the prosecutor's comments were improper standing alone and (2) if they were, did the remarks, viewed in the context of the trial as a whole, deny the defendant a fair trial? *United States v. Kelerchian*, 937 F.3d 895, 916-918 (7th Cir. 2019). Here, the analysis can end at the first stage, because defense counsel's remarks opened the door. Throughout the trial, defense counsel suggested in their arguments, their cross-examinations, and their closing (see Nov. 28 PM Tr. at 16, 19, 21, 22) that others—Cherry Carr, Ted Cook, Carlos Carmona, Jeanette Shin—were the true fraudsters, not Defendant himself. The Government's proportional response to these suggestions was entirely proper. But even if it had crossed the line, the argument was so brief and the evidence of Defendant's guilt so overwhelming that it could not possibly have made any difference to the overall fairness of the trial or its outcome.

### IV. Conclusion

For the reasons stated above, Defendant's motion for judgment of acquittal or new trial [206] is denied. Counsel are directed to confer and email the Courtroom Deputy no later than May 5, 2020 about a sentencing date during the week of July 6.

Dated: April 28, 2020

Robert M. Dow, Jr.
United States District Judge